UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES TALBERT, | : |
| Plaintiff | : CIVIL ACTION NO. 3:21-1231 |
| v. | : (JUDGE MANNION) |
| JOHN WETZEL, *et al.*, | : |
| Defendants | : |

**MEMORANDUM**

**I. BACKGROUND**

On July 13, 2021, Plaintiff, Charles Talbert, an inmate currently confined in the State Correctional Institution, Camp Hill, Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1, complaint).

By Order dated September 23, 2021, Plaintiff's motion to file an amended complaint was granted, Plaintiff's first amended complaint was accepted for filing and was served on the Defendants named therein. (Doc. 50).

By Memorandum and Order dated December 16, 2021, Plaintiff's first amended complaint was dismissed for Plaintiff's failure to comply with Fed.R.Civ.P. 8(a)(2) and Fed.R.Civ.P. 20(a)(2). (Docs. 150, 151). Plaintiff

was directed to file a second amended complaint in accordance with Fed.R.Civ.P. 8(a)(2) and Fed.R.Civ.P. 20(a)(2). Id.

On December 28, 2021, Plaintiff filed his second amended complaint. (Doc. 168). The named Defendants are the Department of Corrections; George Little, Acting DOC Secretary; Kevin Ransom, SCI-Dallas Superintendent; Lea Martin, SCI-Dallas Health Care Administrator; SCI-Dallas Lieutenants John Hutchins and Jason Franklin; SCI-Dallas Sergeants Jason Bolesta and Eugene Everett; SCI-Dallas Correctional Officers Conner Jones, Pedro Garcia, Edwardo Silva, Michael Maciejczak and Eric Zagata; SCI-Dallas Medical Director Scott Prince; and Gina Harrison, CRNP. Id.

## II. ALLEGATIONS IN AMENDED COMPLAINT

Plaintiff's second amended complaint is comprised of five separate "Conditions" contained within one document. (Doc. 168) Each "Condition" is separate and distinct as to its claims and parties, as listed below. Id.

### Condition One - Deprivation of Mental Health Care

Plaintiff alleges that "upon being sentenced on December 18, 2019, [Plaintiff] was ordered to receive anger management, drug and mental health treatment by the DOC," and that "while Plaintiff was confined at Dallas, the DOC, Little, Martin and Harrison had deprived [him] treatment for his

aforementioned serious mental illness." (Doc. 168 at 2). Plaintiff claims that "between February, 2020 and August, 2021, Harrison engaged in the following:

> A. Failing to treat Plaintiff in a manner in accordance with the Mental Health Procedures Act.
>
> B. Failing to treat Plaintiff in accordance with standard of mental health care prevailing in the community.
>
> C. Failing to utilize proper assessment and diagnostic procedures and techniques to determine what Plaintiff suffered from mentally.
>
> D. Failing to carefully and thoroughly consult with Plaintiff during their short and unproductive interactions.
>
> F. Failing to provide proper follow up treatment.

Id. Specifically, he alleges that "although other addictive medication was provided within the DOC to inmates with drug and mental health problems, Harrison repeatedly denied Plaintiff access to Adderall and Benzodiazepine drugs for the treatment of his anxiety, tension, agitation, panic attacks, ADHD, impulse behavior and emotional instability." Id. As a result of Harrison's alleged "refus[al] to treat Plaintiff for his serious mental illness" Plaintiff claims she "provided an opportunity for Plaintiff to by punished with long term isolated confinement for behavior attributable to his mental health." Id.

Plaintiff also claims he suffers from a "phobia of food that was served to him inside of open and non-sealed containers," alleging that he had, at some point, previously received food tainted by "mice feces, moths, cockroaches, and other contamination hazardous to his health." Id. Plaintiff claims "Defendant Martin was informed" of his phobia, stating he made a request through the disability accommodation process for packaged food or a modification to DOC administrative policy DC-ADM 801 to have the option to purchase commissary food items. Id. However, Plaintiff adds that Defendant "Harrison failed to document and treat Plaintiff's aforementioned phobia, and [Defendants] Martin, the DOC, and Little denied Plaintiff access to its commissary food services . . . ." Id.

Finally, Plaintiff claims he was punished for misconduct related to his mental health and denied access to "anger management, drug and mental health treatment" programs. Id.

### Condition Two - <u>Deprivation of Medical Care</u>

Plaintiff complains that he suffers from "lower back muscle spasms and a defective gastrointestinal tract through the surgical removal of his large intestine." (Doc. 168 at 4). He claims that he was treated at outside facilities which provided him with "Flexeril muscle relaxant medication, physical therapy" and "a special medical diet [of] adequate portions of food and fluids

to fulfill his hunger, maintain proper nourishment and to stay hydrated from the effects of excessive bowel movements and defective absorption of nutrients." Id. However, he alleges that "in between February, 2020 and August, 2021, DOC, Little and Defendant Prince contributed to the deprivation of medical care for Plaintiff's serious lower back and digestive conditions while he was in long term isolated confinement." Id. The DOC and Little "denied Plaintiff access to its commissary food services to accommodate Plaintiff's small bowel digestive disability, to which deprived him of proper nourishment for his serious medical need." Id. Specifically, he states that "the DOC and Little established and maintained its 801 Policy that denied inmates, including those with defective digestive systems in restricted housing from receiving (for their condition) food from its commissary vendor." Id. As a result of the DOC, Little's "acts and inactions," Plaintiff claims to have been subject to "pain and suffering, ambulation difficulty, dehydration, malnourished, hunger, fatigue, and aggravation to his lower back condition by being housed in a long term isolated confinement cell without adequate room to stretch and exercise. Id.

### Condition Three - Excessive Use of Force

Plaintiff claims that on September 9, 2020, Defendant Jones "had called Plaintiff a racial slur and denied Plaintiff his entire dinner meal to which

- 5 -

Plaintiff filed a grievance on." (Doc. 168 at 5). Plaintiff believes that "in retaliation of Plaintiff filing his grievance against Jones, Jones had ployed (sic) him off the unit into the restricted housing unit stairwell to allow other officers into his long term isolated confinement cell to wrongfully seize newspapers and some of his legal materials." Id. Upon returning from the stairwell, Plaintiff "noticed officers in his cell placing the aforesaid legal materials and publications into a clear plastic bag." Id. Plaintiff "had on clear plastic restraints tied loosely around his wrists that came off without any force or manipulation" and Plaintiff "then walked to the front of the cell door without attempting to go inside and asked the officers why they were confiscating his legal materials and publications." Id. At this point, "Defendants Jones, Hutchins, Franklin, Bolesta, Everett, Garcia, Silva and Zagata "collectively participated in grabbing Plaintiff by the neck and throwing him hard down onto the ground." Id. Once Plaintiff was "defenseless on the ground, with handcuffs behind his back," these Defendants "collectively participated in kicking, kneeing and punching Plaintiff in his head, face, neck, and body areas, while also calling him racial slurs and derogatory names." Id. Plaintiff claims that the injuries he sustained "wouldn't allow him to walk, which also led him to receiving a knee brace and physical therapy for his knee, back, and neck, including both wrists and shoulders. Id. He alleges that "for several

- 6 -

months to follow, [he] suffered from muscle and nerve pain from the incident and has remained on pain medication and therapy." Id.

### Condition Four - Deprivation of Safety and Exposure to Violence

Plaintiff alleges that "while housed in long term isolated confinement at Dallas, Defendant Maciejczak contributed to Plaintiff's physical and psychological oppression." (Doc. 168 at 6). Specifically, Plaintiff states that on February 8, 2021, Defendant Maciejczak "deprived Plaintiff of his breakfast meal" and "called Plaintiff a rat to other inmates in the restricted housing unit, causing hostility towards Plaintiff." Id. Plaintiff "mailed a letter to then Secretary John Wetzel in regard to Maciejczak's oppression [and] threats," who responded on March 9, 2021, "with a corresponding letter, without intervening or directing Maciejczak to cease his conduct." Id.

### Condition Five - Exposure to Unsafe and Inhumane Conditions

Plaintiff claims that "while [he] was in isolated confinement between February 2020 and August 2021, the DOC, Little and Ransom, misused Federal Funding intended for Plaintiff's protection from Covid and furthermore, failed to practice social distancing at Dallas; failed to practice wearing of safety masks at Dallas; failed to practice sanitizing within the restricted housing; [and] failed to practice home confinement to decrease the spread of Covid 19 within the institution." (Doc. 168 at 7). Moreover, Plaintiff

- 7 -

claims that in November and December, 2020, he "began to experience Covid 19 symptoms such as lack of smell and taste, breathing complications, migraine headaches, dizziness, blurred vision and pain in his lungs and chest whenever he inhaled." Id. He states that he "only received vitamins and Tylenol for these symptoms with Prince and Martin failing to refer him to an outside hospital for further diagnostic tests." Id.

For relief, Plaintiff seeks compensatory and punitive damages, costs, fees, and prospective relief on the following six counts:

Count 1. Deliberate indifference to serious mental health needs.

Count 2. Deliberate indifference to serious medical needs.

Count 3. Discrimination on the basis of disability for placement in the RHU, deprivation of commissary food, and denial of anger management, drug, and mental health services.

Count 4. Excessive Use of Force.

Count 5. Deliberate indifference to safety.

Count 6. Exposure to unsafe conditions (COVID-19).

(Doc. 168 at 8-9).

On May 11, 2022, Plaintiff filed a motion to drop certain parties from his suit. (Doc. 297). Specifically, Plaintiff seeks to drop Defendants Scott Prince, Michael Maciejczak, Kevin Ransom and Lea Martin from the above captioned action. Id. Along with dismissing these Defendants, Plaintiff

requests to dismiss Count Two, deprivation of medical care, as it relates to Defendant Prince only; Count Four, deprivation of safety and exposure to violence, as it relates to Defendant Maciejczak; and Count Five, exposure to unsafe and inhumane conditions, as it relates to all Defendants. Plaintiff's motion will be granted and Defendants Prince, Maciejczak, Ransom and Martin, and the Counts against them, will be dismissed from the instant action. Additionally, Count Five, exposure to unsafe and inhumane conditions, will be completely dismissed, as it relates to all Defendants. Defendant Prince's motion to dismiss Plaintiff's second amended complaint (Doc. 188) will be dismissed as moot.

Presently before the Court are remaining Defendants' motions to dismiss Plaintiff's second amended complaint, (Docs. 176, 184, 222) and a plethora of motions filed by Plaintiff. For the reasons that follow, the Court will grant the remaining Defendants' motions to dismiss and deny or dismiss Plaintiff's pending motions.

### III. MOTION TO DISMISS

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff

must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of *pro se* prisoner litigation, the court must be mindful that a document filed *pro se* is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it

appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## IV. Discussion

### A. Motion to Dismiss Geisinger Clinic

Plaintiff's first amended complaint named Geisinger Clinic as a Defendant. (Doc. 51). However, Plaintiff's second amended complaint does not name Geisinger Clinic as a Defendant. (Doc. 168). Since an amended complaint stands alone without reference to any other document, see Fed.R.Civ.P. 8(e), Geisinger Clinic is no longer a named Defendant in this action, their motion to dismiss[1] (Doc. 176) will be granted and Geisinger Clinic will be dismissed from the above captioned action. Plaintiff's motion for sanctions (Doc. 154) and to strike Geisinger's motion to dismiss (Doc. 251) will be dismissed as moot.

---

[1] Defendant, Geisinger Clinic filed a motion to dismiss, indicating that they were not named in Plaintiff's second amended complaint, and alternatively, addressing the claims raised in Plaintiff's first amended complaint, should they be considered. (Doc. 178).

### B. Motion to Dismiss Defendant CRNP Harrison

Defendant Harrison moves for dismissal of Plaintiff's second amended complaint under the doctrine of *res judicata* in light of the state court's holding in Talbert v. Pennsylvania Department of Corrections, et al., Civil No. 2021-02690. (Doc. 198). Under this doctrine, a claim is barred where three circumstances are present: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991). Likewise, in Pennsylvania:

> Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies. The doctrine therefore forbids further litigation on all matters which might have been raised and decided in the former suit, as well as those which were actually raised therein. Similarly, [t]he doctrine of collateral estoppel or issue preclusion prevents a question of law or an issue of fact that has once been litigated and fully adjudicated in a court of competent jurisdiction from being relitigated in a subsequent suit.

Mariner Chestner Partners, L.P. v. Lenfest, 152 A.3d 265, 286 (Pa. Super. 2016) (internal citations and quotation marks omitted). *Res judicata* may be raised in a motion to dismiss when its applicability is apparent on the face of the complaint. See Rycoline Prods., Inc. v. C&W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997).

Here, all four elements are met. The complaint in <u>Talbert v. Department of Corrections</u>, Civil No. 2021-02690 names Gina Harrison as a Defendant and alleges the same allegations contained in the amended complaint herein. (Doc. 198-2 at 7). Specifically, Plaintiff alleges that upon entry into the DOC on December 23, 2019, Defendant Harrison "intentionally and maliciously deprived Plaintiff [of] mental health care and treatment for his aforementioned serious mental health disorders for more than a year while Plaintiff was inside of solitary confinement, which has substantially caused Plaintiff's mental health to deteriorate." <u>Id</u>. He further claims that Harrison failed to "prescribe Plaintiff effective medication, fail[ed] to properly diagnose Plaintiff's condition, fail[ed] to provide him with any counseling, therapeutic services and adequate care and treatment." <u>Id</u>. By Order dated January 4, 2022, Defendants preliminary objections were sustained, and Plaintiff's amended complaint was stricken, with prejudice, as against Defendant Gina Harrison, CRNP. (Doc. 198-1 at 1, copy of <u>Talbert v. Department of Corrections</u>, Civil No. 2021-02690). Thus, the Court finds that Plaintiff is

barred from litigating his claims against Defendant Harrison and will, therefore, grant Defendant Harrison's motion to dismiss.[2]

---

[2] The Plaintiff argues that Defendant Harrison's *res judicata* argument should be stricken as untimely because it was not raised in her initial January 11, 2022 motion to dismiss. Initially, the Court notes that Defendant Harrison states in her supplemental that she had not received the copy of the state court order before filing her January 11, 2022 motion to dismiss. Regardless, the rule is:

For purposes of *res judicata*, the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect.

Comment:

a. General. In order that a final judgment shall be given *res judicata* effect in a pending action, it is not required that the judgment shall have been rendered before that action was commenced. Nor is a judgment, otherwise entitled to *res judicata* effect in a pending action, to be deprived of such effect by the fact that the action in which it was rendered was commenced later than the pending action. It is merely required that rendition of the final judgment shall antedate its application as *res judicata* in the pending action. Thus, when two actions are pending which are based on the same claim, or which involve the same issue, it is the final judgment first rendered in one of the actions which becomes conclusive in the other action (assuming any further prerequisites are met), regardless of which action was first brought.

Restatement (Second) of Judgments §14 (1982). Accord Matter of Hansler, 988 F.2d 35, 38 (5th Cir.1993). The first judgment, regardless of when the suits were filed, is given preclusive effect. Osiris Enterprises v. Borough of Whitehall, 398 F.Supp.2d 400, 410 (W.D.Pa.2005). Thus, Plaintiff's motion to dismiss Defendant Harrison's *res judicate* argument as untimely (Doc. 218) will be denied.

### C. Motion to Dismiss Commonwealth Defendants

The Commonwealth Defendants move to dismiss Plaintiff's second amended complaint for failing to comply with this Court's December 16, 2021 Order, (See Doc. 151), directing Plaintiff to file an amended complaint that complies with Fed.R.Civ.P. 8 and Fed.R.Civ.P. 20(a)(2). (Doc. 243). Specifically, Defendants argue that Plaintiff's second amended complaint alleges facts regarding five separate "conditions" and purports to state six claims for relief against thirteen Commonwealth Defendants based on separate unrelated transactions and occurrences that do not involve an issue of law or fact common to all Defendants. Id. The Court agrees. Plaintiff, again, attempts to bootstrap several separate and distinct claims for relief against different Defendants at different time frames, in violation of Federal Rules of Civil Procedure 8 and 20. Even, in light of Plaintiff's motion to dismiss various named Defendants and the claims against them, Plaintiff's second amended complaint still contains four remaining unrelated claims. Plaintiff, having filed "at least fifty-four lawsuits" in this and the Eastern District of Pennsylvania (as of April 2019). Talbert v. Pa. State Corr. Officer Ass'n, No. 3:20-cv-1154, Memorandum, 4 n.2 (M.D. Pa. Mar. 15, 2021), is more than familiar with the dictates of the Federal Rules of Civil Procedure. Thus, rather than have Plaintiff file a generalized third amended complaint,

- 16 -

the Court will require Plaintiff to choose which one of the four remaining claims, in his second amended complaint, he wishes to proceed on against the remaining Commonwealth Defendants and file a third amended complaint with respect to **only** that claim. The Court limits Plaintiff's choosing to the following:

> Condition One – <u>Deprivation of Mental Health Care</u>
> (Second Amendment Complaint at ¶¶ 16-23 and 30-32).
>
> Condition Two - <u>Deprivation of Medical Care</u>
> (Second Amendment Complaint at ¶¶ 38-41, 46).
>
> Condition Three – <u>Excessive Use of Force</u>
> (Second Amendment Complaint at ¶¶ 47-56).
>
> Condition Four – <u>Deprivation of Safety and Exposure to Violence</u>
> (Second Amendment Complaint at ¶¶ 61-62).

Plaintiff's failure to file a third amended complaint with respect to **only one** of the above four claims will result in "Condition One" of the second amended complaint being the only claim permitted to proceed and the remainder of Plaintiff's second amended complaint will be stricken.

### D. **Plaintiff's Motion to Compel**

With respect to Plaintiffs' pending motions to compel discovery (Docs. 173, 182, 249), it is clearly established that:

> "[A] stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion 'appear[s] to have substantial grounds' or, stated another way, 'do[es] not

- 17 -

appear to be without foundation in law.'" In re Currency Conversion Fee Antitrust Litigation, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002) (quoting Chrysler Capital Corp. v. Century Power Corp., 137 F.R.D. 209, 209-10 (S.D.N.Y. 1991)) (citing Flores v. Southern Peru Copper Corp., 203 F.R.D. 92, 2001 WL 396422, at *2 (S.D.N.Y. Apr. 19, 2001); Anti-Monopoly, Inc. v. Hasbro, Inc., 1996 WL 101277, at *2 (S.D.N.Y. March 7, 1996)).

Johnson v. New York Univ. School of Educ., 205 F.R.D. 433, 434 (S.D.N.Y. 2002).

Guided by these legal tenets, the Court concludes that further discovery should be briefly stayed at this time until after the Court resolves any motion to dismiss the Plaintiff's anticipated third amended complaint. We reach this conclusion in accordance with settled case law, finding that: "[A] stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion 'appear[s] to have substantial grounds' or, stated another way, 'do[es] not appear to be without foundation in law.'" Johnson v. New York Univ. School of Educ., 205 F.R.D. 433, 434 (S.D.N.Y. 2002). Therefore, Plaintiff's motion to compel will be dismissed without prejudice to renewal once any motion to dismiss the third amended complaint is resolved.

## V. CONCLUSION

For the above stated reasons, the Court will grant the Plaintiff's motion to terminate Defendants Scott Prince, Michael Maciejczak, Kevin Ransom and Lea Martin, and the claims against these Defendants, as well as Count Five of the second amended complaint. The motions to dismiss, filed on behalf of Defendants, Geisinger Clinic and Gina Harrison will be granted. The Commonwealth Defendants' motion to dismiss Plaintiff's second amended complaint for failure to conform to Fed.R.Civ.P. 8(a)(2) and Fed.R.Civ.P. 20(a)(2) will be granted. Plaintiff will be granted an opportunity to file a third amended complaint, in accordance with the Court's instructions contained herein.

An appropriate Order follows.

*Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 20, 2022**
21-1231-02