United States District Court for the Middle District of Pennsylvania

Charles Talbert           No. 21-cv-1231
vs.
Department of         (Judge Mannion)
Corrections;
George Little.        Third Amended Complaint

FILED SCRANTON
OCT 06 2022
PER _____ DEPUTY CLERK

Plaintiff, Charles Talbert, hereby files this Third Amended Complaint to address and redress the violations of his Eighth Amendment right to adequate medical care and Title II of the Americans With Disabilities Act. Defendants are sued in their personal capacity for damages, and their official capacity for injunctive relief.

Parties:

1. Plaintiff is an adult individual, currently being confined at SCI Phoenix, 1200 Mokychic Drive, Collegeville, PA. 19426.

2. Department of Corrections (DOC), is an executive agency, with the responsibility of administering the Commonwealths' adult correctional institutions, with its headquarters located at 1920 Technology Parkway, Mechanicsburg, PA 17050.

3. George Little (Little), is the Secretary for the DOC.

Statement of Claims:

4. For more than 10 years, Plaintiff was diagnosed and treated for a defective gastrointestinal tract disability, due to the surgical removal of his large intestine, and other abdominal procedures.

5. During those 10 years, Plaintiff received the same, or close to the same course of treatment, for his aforementioned digestive condition at: Albert Einstein Medical Center, Hahnemann Hospital, and the Philadelphia Department of Prisons. See Medical Records.

6. Plaintiffs' disability causes excessive, frequent, and unpredictable watery bowel movements, and without being fed adequate portions, and specific types of food, the excessive diarrhea causes normal (prison food servings) to quickly pass through his digestive tract, ultimately causing him to suffer from malabsorption of vitamins, minerals, and macronutrients, dehydration, starvation, pain, and malnourishment.

7. Medical records indicate that to avoid Plaintiff suffering from adverse health issues, he is required double portions of food, health shakes, peanut butter and jelly, and/or, food from the commissary vendor.

8. Medical records also indicate that, to slow down the speed at which food moves through his digestive tract, and to help thicken his stool, he is required to eat starchy foods.

9. In December 2019, the Philadelphia Department of Prisons (PDP) had forwarded all of Plaintiffs' medical records, aforesaid, to the DOC, so that, upon his admission, he would be able to continue to receive the care and treatment that was effective, and thus, in conformity with the standard of care prevailing in the field of gastroenterology.

10. The Defendants are responsible for the overall operation of the DOC, including, most specifically here, the healthcare of every person within its custody and control.

11. In order to carry out this responsibility, the Defendants

receive state and federal funding, to hire, and to contract with trained and licenced medical professionals.

12. In addition, the Defendants have adopted, implemented, and enforced policy statements that directly affects what type of health care, and food services, the incarcerated persons have access to.

13. It is clear through years of medical records, the Plaintiffs' disability is permanent, and thus, his established diet should stay within conformity to what his gastroenterologist specialists had deemed medically necessary.

14. However, once Plaintiff entered the DOC in December 2019, the DOC and Little, through the hiring and contracting of incompetent medical staff that have little to no knowledge of gastroenterology, caused Plaintiff to be deprived access to trained and licensed medical professionals for his disability, and thus, enabled a web of medical records to be created by medical staff that knowingly failed to use any professional judgment.

15. The Defendants knowingly and intentionally failed to adopt, implement, and enforce a policy that specifically provided a medical diet that adequately fit Plaintiffs' needs to maintain his digestive disorder, as it provided for other inmates with medical disorders that requires specific medical diets.

16. Lastly, the Defendants enforced the DC-ADM 801 Policy upon the Plaintiff that specifically deals with Inmate Discipline, since January 2020.

17. Specifically, section 6 of the 801 Policy deprives all inmates under "disciplinary custody" (DC) status, access to food from the DOC commissary vendor, unless approved by the Program Review Committee (PRC).

18. Medical staff in August 2021, stated in a grievance response that it was medically necessary for Plaintiff to have access to the commissary vendor in order to purchase food for the maintenance of his disability; to which, after the 15 days to appeal had expired, PRC and Defendants personally rejected their medical staffs response, and thus denied Plaintiff access to health care without no medical reasoning.

19. Plaintiff relied on that grievance response to his own detriment, since their was poor coordination between medical and Defendants to assure that medical orders, instructions, and/o, recommendations were carried out.

20. Plaintiffs disability requires an accommodation of optimal nutrition, however, the Defendants' aforesaid acts and omissions caused him to be denied reasonable accommodations such as:

   A. modifying the food service policy to enable him to receive adequate portions and types of food; and
   B. modifying the inmate discipline policy to enable him to receive, through his own money, food that would provide proper nutrition and thicken his stool to slow down his diarrhea.

21. The Defendants purchase and provides food that is knowingly ungraded, and high in fiber, that increased bowel movements.

22. The Defendants' medical staff, and state-wide nutritionist, knows this, but, due to their incompetency on gastroenterology, Plaintiff is forced to suffer with inadequate food that directly has adverse impact on his overall health.

23. As a proximate result of Defendants' acts and omissions:

A. Plaintiff suffers from malabsorption, malnourishment, fatigue, dehydration, starvation, and hunger pain.
B. Plaintiff suffers from mental distress.
C. Plaintiff suffers from uncontrollable diarrhea and even accidental bowel movements while asleep.
D. Plaintiff suffers from an inadequate diet and from incompetent medical staff members.

Count One - Violation of ADA, 42 USC Section 12101, et seq.:

24. Plaintiff is a qualified individual within the meanings under sect 12102(a) and 12131(a).

25. As a result of Defendants' failure to make the aforesaid reasonable accommodations and modifications to the aforesaid policies and procedures, Plaintiff was denied necessary reasonable accommodations.

26. Defendants discriminated against Plaintiff by failing to train, hire, and contract with medical professionals, and failing to recognize Plaintiffs' digestive disabilities, in a manner that provided a medical response and/or policy modification response, that recognized the heightened risk of the aforesaid harm that Plaintiff has and continues to face as a result of his disability.

27. Defendants' acts and omissions resulted in disability discrimination in violation of Title II of the ADA.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $250,000.00, punitive damages, costs, and a preliminary injunction.

Count Two - Unconstitutional Policy:

28. Section 6 of the DC-ADM 801 Policy, specifically the paragraph(s) that deprive inmates under DC status access to food of their own choose like others similarly situated, has no reasonable relationship to the modification of Plaintiffs' behavior.

29. Contrarily, this section of the 801 Policy is clearly arbitrary, capricious, and irrational, because it deprived and continues to deprive Plaintiff access to nutrition that is medically necessary, and that the DOC is unwilling to provide to him through the normal food service to maintain his disability.

30. Through various forms of communication, the DOC and Little, through letter, medical records, PRC reports, religious accommodations request forms, and legal matters, including medical supervisor responses that concluded grievances filed for inadequate portions of food, had received sufficient knowledge that access to the commissary vendor was ideal for the Plaintiff to receive adequate food for his condition.

31. Little, with knowledge of this required accommodation, nevertheless, deliberate indifferently, and with callous disregard for Plaintiffs' medical disability, denied Plaintiff access to food from the commissary vendor due to his irrational policy.

WHEREFORE, Plaintiff demands judgment against Little for an amount in excess of $250,000.00, punitive damages, costs, and a preliminary injunction.             Respectfully submitted,

I verify under penalty of perjury that the foregoing is true and correct.
9-30-22                          Charles Talbert - Paralegal

Charles Talbert
No. QA4727
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA. 19426                September 30, 2022

Peter J. Welsh, Clerk
U.S. Courthouse
235 N. Washington Ave.
PO Box 1148
Scranton, PA 18501

RE: Talbert v. DOC, et al, No. 21-cv-1231-MEM

Dear Mr. Welsh:

Enclosed herein, please find the following documents:

1. Third Amended Complaint.
2. Motion for Preliminary Injunction with Proposed Order.
3. Brief.
4. Declaration.
5. Exhibits - Medical Records.

Please file and forward to the Honorable Judge. Thy.

Thank You!

Yours Truly,

Chas Talbert



Charles Talbert
No. QA4727
SCI Phoenix
1200 Mokychic Dr.,
Collegeville, PA 19426

LEGAL

RECEIVED
SCRANTON
OCT 06 2022
PER_____ DEPUTY CLERK

To: Mr. Peter J. Welsh, Clerk
U.S. Courthouse - Middle
235 N. Washington Ave.,
PO Box 1148
Scranton, PA 18501

"Inmate Mail - PA DEPT. OF CORRECTIONS"